IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| SHARON J.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 5:20-cv-00079 |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | By:   Joel C. Hoppe |
|     Defendant.[2] | ) |         United States Magistrate Judge |

Plaintiff Sharon J. asks this Court to review the Commissioner of Social Security's final decision denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The case is before me by the parties' consent under 28 U.S.C. § 636(b)(1)(B). ECF No. 11. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that substantial evidence supports the Commissioner's denial of benefits, and the decision should be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named defendant in this action. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe medical impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based

on his or her residual functional capacity; and, if not (5) whether he or she can perform other work existing in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 416.920(a)(4).[3] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Sharon applied for SSI in October 2018, Administrative Record ("R.") 198–203, alleging that she was disabled by scoliosis, stenosis, post-traumatic stress disorder, disc degeneration, and systemic lupus, R. 231. Disability Determination Services ("DDS"), the state agency, denied her claim initially in February 2019, R. 71–86, and upon reconsideration that May, R. 88–106. In February 2020, Sharon appeared with counsel and testified at an administrative hearing before ALJ H. Munday. R. 34–70. A vocational expert ("VE") also testified. R. 61–69.

During his opening statement, Sharon's attorney mentioned that Sharon was "using a cane regularly" because she fell and she "must use the cane to get up." R. 41. Counsel conceded the medical record contained no "objective[]" evidence that the cane was "medically prescribed" or otherwise necessary, but Sharon "indicate[d] that her doctor ha[d] communicated to her that it's a good idea that she uses it." *Id.* Sharon testified that she had "actually fallen because [she] lost control over [her] left leg" and that "part of the reason why [she] carri[ed] the cane" was to "hopefully . . . prevent [her]self from falling." R. 49. When Sharon's boyfriend testified that he had taken her to Page Memorial Hospital "at least three times" in the past year for falling, R. 58–59, ALJ Munday agreed to leave open the record for twenty-one days so counsel could obtain

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

those records "to see if there is corroborating evidence to support th[is] testimony," R. 69. *See* R. 15–16, 23. Counsel submitted records from PMH showing that Sharon went to the emergency room five times between February 2018 and August 2019. R. 470–501 (Feb. 2018); R. 502–41 (Mar. 2018); R. 542–78 (Feb. 2019); R. 579–612 (Apr. 2019); R. 613–52 (Aug. 2019). He submitted a post-hearing letter from Tabitha Garrison, FNP, at Shenandoah Pain & Palliative Care Clinic. *See* R. 15–16, 23; Pl.'s Br. 3, ECF No. 14; Pl.'s Ex. 1 (Mar. 2, 2020), ECF No. 21. FNP Garrison's letter is addressed "To Whom It May Concern" and states in its entirety, "Sharon [redacted] is currently under my care for pain management. After evaluation and assessment, I strongly recommend [Sharon] utilize a cane to help with mobility issues and to decrease falls risks." Pl.'s Br. Ex. 1. Counsel also submitted treatment notes from Valley Health SMH Behavioral Health that purportedly "show [Sharon] was assessed with PTSD and Moderate Depressive Disorder." Pl.'s Br. 3–4.

    ALJ Munday issued an unfavorable decision on April 1, 2020. R. 15–28. Sharon's "degenerative disc disease, cervicalgia, neuralgia, and post-traumatic stress disorder" were severe medical impairments, R. 18, but they did not meet or medically equal the relevant Listings, R. 18–20 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.04, 12.15). ALJ Munday then evaluated Sharon's residual functional capacity ("RFC")[4] based on all the evidence in the record.

---

[4] A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), and it should reflect specific, credibly established "restrictions caused by medical impairments and their related symptoms" that affect the claimant's "capacity to do work-related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at *6–7 (W.D. Va. Jan. 25, 2016), *adopted by* 2016 WL 649889 (W.D. Va. Feb. 17, 2016).

*See* R. 20–26. She found that Sharon could perform a limited range of "light" work[5] with multiple non-exertional restrictions:

> lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking 4 hours in an 8-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders/ropes/scaffolds; frequently handle; frequent exposure to vibrations; frequent exposure to hazardous conditions, including unprotected heights and moving machinery; able to perform simple, routine tasks; only simple work-related decisions with few workplace changes; no work at a fixed production rate pace; occasional interaction with co-workers and supervisors; and no interaction with the general public.

R. 20; *see* R. 24. Sharon's RFC ruled out her past relevant work. R. 26 (citing R. 63–64). Based on the VE's testimony, however, ALJ Munday found that Sharon could do certain light, unskilled occupations (e.g., laundry sorter, laundry folder, maid) that offered a significant number of jobs in the national economy. R. 34 (citing R. 64–66). Thus, Sharon was not disabled from August 31, 2018, through April 1, 2020. R. 27–28. The Appeals Council declined to review that decision in October 2020, R. 1–5, and this appeal followed.

III. Discussion

Sharon's brief raises three narrow challenges to ALJ Munday's decision. *See* Pl.'s Br. 2–4. First, she asserts that ALJ Munday "failed to consider," *id.* at 2, an examining psychologist's statement that, although he could evaluate how Sharon's psychiatric impairments affected certain

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "The full range of light work requires the ability to stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)). An RFC that allows the claimant to lift up to twenty pounds at one time, but restricts total standing and walking to fewer than six hours during an eight-hour day is often characterized as permitting a "reduced" or "limited" range of light work, *see* R. 24, because the person's capacities for standing/walking fall between what is needed to do "sedentary" work and what is needed to perform the "full range of light work." *E.g.*, *Neal*, 2010 WL 1759582, at *2 (explaining that a four-hour standing/walking restriction "exceed[s] the definition of sedentary work" because it permits the claimant to "stand or walk for more than two hours per workday," but "fall[s] short of the full range of light work because [the claimant] cannot stand or walk for six hours per workday").

5

work-related *mental* abilities, he "would defer to [her] treating physician" to evaluate "what effect if any her medical conditions would have upon these abilities," R. 361. *See* Pl.'s Br. 2 (citing R. 361). Sharon contends that Joseph Cianciolo, Ph.D., recommended "deferr[ing]" to any opinion FNP Garrison gave in her capacity as Sharon's "treating physician," *id.*, and she asserts that ALJ Munday ignored Dr. Cianciolo's so-called "recommendation" when evaluating FNP Garrison's opinions about how Sharon's back and leg pain affected certain work-related *physical* abilities, *id.* at 2 (citing R. 412–13; Pl.'s Br. Ex. 1). *See* R. 23, 25 (citing R. 412–13). Second, Sharon asserts that ALJ Munday's decision did "not even mention[]" Sharon's cane use, Pl.'s Br. 3, and she faults the ALJ for "fail[ing] to take into consideration" the statement Sharon "obtained [from FNP Garrison] after the hearing to clarify the issue of the cane," *id.* (citing Pl.'s Br. Ex. 1). Finally, Sharon notes that ALJ Munday did not consider the mental-health treatment notes that she submitted after the hearing, which purportedly show she "was assessed with PTSD and Moderate Depressive Disorder." Pl.'s Br. 3–4. These objections are meritless.

\*

Sharon's objections focus on her allegedly disabling back and leg pain. Pl.'s Br. 2–4. In early April 2018, Sharon established care with FNP Garrison to manage moderately severe (6/10) pain in her neck and lower back. R. 367–69, 412. The pain started many "years ago," but it was now "nearly constant" and limited her activities of daily living, especially those involving walking and "prolonged" sitting or standing. R. 368–69; *see* R. 412. On exam, Sharon had full (5/5) motor strength throughout, but "walk[ed] with antalgic gait"; had positive straight-leg raise test on the left and positive facet loading throughout the spine; endorsed "tenderness" to palpation of the sacroiliac joint; exhibited "diminished" sensation to light touch in the left lower extremity; and reported tenderness and "pain with motion" of the neck. R. 369. ("Joints, Bones,

and Muscles: tenderness and limited ROM."). Comprehensive diagnostic imaging showed equal leg lengths with "no significant pelvic tilt," R. 346; "mild degenerative changes at L3-4 and L4-5 with no more than mild stenosis," R. 345; facet arthritis at L4-L5 and L5-S1 with "preserved" disc spaces and no fracture or malalignment, R. 351; "minimal disc space narrowing in the midthoracic spine," but no fracture or malalignment, R. 347; and "no significant radiological abnormalities" in the hips, R. 348.

      Sharon followed-up with FNP Garrison about once a month between late April 2018 and December 2019. *See generally* R. 372–411, 425–65. Overwhelmingly, FNP Garrison's exam notes from this period document only two abnormal findings: "Joints, Bones, and Muscles: tenderness and limited ROM"; and "Neurologic:-walks with antalgic gait." R. 373, 378, 382, 386, 390, 394, 398, 402, 406, 410, 427, 432, 440, 444, 448, 452, 456. Sharon consistently denied medication side effects, and FNP Garrison did not note that she observed any. R. 390, 399, 402, 407, 428, 432. The records from that period do not mention objective motor function, strength, sensation, or any other findings relevant to Sharon's allegedly disabling pain. *See generally id.* The sole exception is FNP Garrison's exam on October 14, 2019, where she noted Sharon had full (5/5) motor strength throughout, but "walk[ed] with antalgic gait"; had positive straight-leg raise test on the left and positive facet loading throughout the spine; endorsed "tenderness" to palpation of the sacroiliac joint; and exhibited "diminished" sensation to light touch in the left lower extremity. R. 435. These findings are identical to FNP Garrison's findings on Sharon's initial exam in early April 2018. *Compare* R. 435–36, *with* R. 369. Other providers' physical exam notes from the relevant time show that Sharon moved all extremities, had "normal" sensation and strength, full range of motion, "easy transfers and ambulation," "no deformity, no step-offs," and "crepitus with movement of her cervical spine," but no "elicit[ed] tenderness with

palpation to the cervical or lumbar spine [or] paraspinals." R. 418, 421, 424 (Feb. 2018–Nov. 2019); *see also* R. 473, 506, 546, 616.

None of Sharon's treatment records indicate that she carried or used a cane in a clinical setting. R. 23; *see generally* R. 419–42, 361, 369–411, 419–424, 428–65, 616. On February 2, 2019, Sharon went to the emergency room at Page Memorial Hospital after she fell while trying to break up a dog fight one day earlier, "injuring her back side and hip." R. 544. She reported "walk[ing] with a cane since this happened yesterday" and now had worsening acute "pain over her posterior pelvis." *Id.* On exam, Sharon endorsed "moderate tenderness" over the sacrum and right hip, but "full passive range of motion of the right hip without difficulty," "no shortening of the right leg or external rotation" of that hip, and "no focal neurologic deficit." R. 546. The attending physician "reassured" Sharon that her hip X-ray was normal and instructed her to follow up with her primary care provider as needed. R. 548.

In April 2019, FNP Garrison wrote her first of two "To Whom It May Concern" letters supporting Sharon's disability claim. R. 412–13. This letter states that Sharon presented to North American Spine & Pain of Virginia in April 2018 to treat "lower back pain that radiated down the left leg [and] began over 20 years" earlier. R. 412. At that time, Sharon reported "nearly constant" "moderate to severe" pain and "complained of difficulty walking with numbness in the lower extremities and neck pain." *Id.*; *see* R. 368–69. Diagnostic images and "a physical exam . . . confirmed" diagnoses of "chronic pain, lower back pain, neck pain, scoliosis, bilateral hip, [and] lumbar degenerative [sic]." R. 412. Sharon had "been prescribed medications that have significant side effects." *Id.* FNP Garrison opined that Sharon had "significant limitations to her activities of daily living," was "unable to sit or stand for prolonged duration," and was "limited in [her] ability to walk, climb stairs, bend or twist at the waist, lift objects, [and] perform

8

household chores," and was "physically unable to pursue any type of gainful employment." R. 412–13. FNP Garrison's second letter dated March 2, 2020, states in its entirety, "Sharon [redacted] is currently under my care for pain management. After evaluation and assessment, I strongly recommend [Sharon] utilize a cane to help with mobility issues and to decrease falls risks." Pl.'s Br. Ex. 1.

\*\*

ALJ Munday discussed most of this evidence, including Sharon's allegations about using a cane, in her written decision. *See* R. 18–26. She accepted and admitted into evidence the PMH emergency-room records, even though they were not timely submitted under the governing regulation, 20 C.F.R. § 416.1435, because she had agreed at the hearing to let Sharon submit specific hospital records that "allegedly pertained to falls." R. 15 (citing R. 58–59, 69; 20 C.F.R. § 416.1435(a)–(b)); *see also* R. 23. She "declined to accept" or admit into evidence FNP Garrison's post-hearing letter "regarding cane use" because "the record was not held open for this purpose, no exception to [the] timeliness regulation was raised, and it was not timely" under 20 C.F.R. § 416.1435(a) or (b). R. 15–16 (explaining that § 416.1435(a) requires the claimant to "inform [the ALJ] or submit any written evidence . . . no later than 5 business days before" the hearing and that, if the claimant does "not comply with this requirement, the [ALJ] may decline to consider or obtain the evidence unless" the ALJ finds any of the exceptions in § 416.1435(b) apply). Nonetheless, ALJ Munday discussed FNP Garrison's letter elsewhere in her written decision, R. 23, and she cited both its substance and the fact it "was generated <u>after</u> the date of the hearing" in rejecting Sharon's allegation "that her medical provider had encouraged the use of a cane," *id.* (citing R. 41, 49). ALJ Munday also declined to consider Sharon's post-hearing mental-health treatment notes because they were untimely under § 416.1435(a)–(b). R. 16. Sharon does not challenge ALJ Munday's adherence to the applicable deadline, 20 C.F.R. §

9

416.1435(a), or her conclusion that the enumerated exceptions in § 416.1435(b) did not apply to FNP Garrison's March 2020 letter or the mental-health records. Pl.'s Br. 3 (asserting only that the ALJ "failed to take [the letter] into consideration" and "did not even consider" the mental-health records). Accordingly, I find no legal error in the ALJ's treatment of this evidence.[6]

Next, Sharon objects to ALJ Munday's discussion of Dr. Cianciolo's consultative report and FNP Garrison's April 2019 opinion that Sharon's back and leg pain limited her physical capacities to work. Pl.'s Br. 2 (citing R. 24–25, 361, 412–13).[7] ALJ Munday's mental RFC finding is generally consistent with Dr. Cianciolo's opinion that Sharon could perform "simple and repetitive tasks," but her "ability to perform detailed and complex tasks would appear to be mildly impaired as a function of concentration difficulties" and her abilities to maintain regular workplace attendance, perform work activities on a consistent basis, and complete a "normal workday or work week without interruption *from psychiatric condition*s would appear to be moderately impaired," R. 361 (emphasis added). *See* R. 20, 24. Sharon correctly points out that ALJ Munday did not mention Dr. Cianciolo's caveat that, "As to what effect if any her *medical conditions* would have upon these abilities, *this examiner would defer* to [Sharon's] treating physician," R. 361 (emphasis added). *See* R. 24; Pl.'s Br. 2 (quoting R. 361). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [or] her decision."

---

[6] Additionally, Sharon's mental-health records that, as described by her attorney, consisted of her medical history, list of medications, and diagnosis of PTSD and depression, were cumulative of other information already in the administrative record, such as Dr. Cianciolo's psychological assessment. *See* R. 360–61.

[7] A "medical opinion" is a statement from a "medical source" about what a claimant can do despite her impairments and whether one or more impairments causes limitations or restrictions in her ability to perform physical, mental, and other work demands and to adapt to environmental conditions in the workplace. 20 C.F.R. § 416.913(a)(2)(i)–(iv). The ALJ must adequately explain whether and to what extent every medical opinion in the record is persuasive. *See* 20 C.F.R. § 416.920c(b). The regulations instruct that supportability and consistency are "the most important factors" and that the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding. *See id.* § 416.920c(b)(2), (c)(1)–(2).

*Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). ALJ Munday "stated that the whole record was considered," *id.*; *see* R. 20, and articulated why she found Dr. Cianciolo's opinion partially persuasive in determining Sharon's mental RFC, R. 24–25; 20 C.F.R. § 416.920c(b). Sharon does not explain why the fact that Dr. Cianciolo, who is a clinical psychologist, declined to offer an opinion about the extent, if any, to which Sharon's physical (i.e., "medical") conditions impacted her concentration, persistence, or pace, R. 361, "might have changed the outcome of [her] disability claim," *Reid*, 769 F.3d at 865.

      Finally, Dr. Cianciolo's statement cannot be reasonably interpreted as a "recommendation" that *the ALJ* should defer or "give[] greater weight" to any medical-source opinion, including FNP Garrison's April 2019 letter. Pl.'s Br. 2 ("Dr. Cianciolo stated that he would defer further opinion to her treating physician, Tabitha Garrison, N.P. . . . Ms. Garrison's opinion should have been given greater weight due to the recommendation of . . . Dr. Cianciolo."). ALJ Munday explained that FNP Garrison's April 2019 letter was "not persuasive" because it was "not consistent with or supported by" specific medical evidence, including her own limited abnormal findings on Sharon's physical exams, R. 25 (citing R. 390, 394, 398, 402, 406, 410, 423, 432, 435, 440, 444, 448, 452, 473, 506, 546, 616), and the DDS physicians' opinions that Sharon could lift/carry twenty pounds occasionally and ten pounds frequently; sit for six hours, and stand/walk for four hours, in an eight-hour day; and occasionally climb ramps/stairs, stoop, crouch, or crawl, R. 24 (citing R. 75–80, 98–99). Sharon does not challenge any of ALJ Munday's findings or conclusions on these points. Pl.'s Br. 2–4.

      Sharon does assert that the ALJ erred in not accounting for medication side effects in her RFC. Typically, "an ALJ must consider medication side effects in evaluating the credibility of a claimant's statements about subjective symptoms like pain." *Rowland v. Colvin*, No. 4:13cv7,

11

2014 WL 2215884, at *15 (W.D. Va. May 29, 2014) (citing 20 C.F.R. § 404.1529(c)(3)(iv)). Nonetheless, "an ALJ's failure to consider medication side effects prejudices the claimant only if the claimant has provided evidence that the side effects caused some limitation in the claimant's RFC." *Id.*; *cf. McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate judge that, "[w]ith regard to [her] hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitation.").

Sharon testified that her medications caused side effects of dry mouth, fatigue, loss of appetite, and trouble concentrating. R. 47. Nevertheless, throughout her treatment, she consistently denied side effects from her medications and reported "improved functionality" with them. R. 390, 395, 399, 403, 407, 449, 453, 432. Moreover, despite listing about fifty medication side effects in her April 2019 letter, R. 412, FNP Garrison's treatment notes do not document that she observed Sharon experienced any medication side effects. Considering this complete absence of any documented medication side effects in the medical records, I cannot find that the ALJ erred by not including any limitations for Sharon's purported medication side effects.

Lastly, the ALJ reasonably found that the record did not establish that Sharon required the use of a cane. R. 23. The ALJ acknowledged that some of Sharon's treatment notes showed antalgic gait, but she also correctly found that none of the treatment records documented that Sharon used or needed to use a cane. *Id.* Thus, I find that the ALJ's decision to omit from the RFC any limitation for the use of a cane is supported by substantial evidence. *See Scott v. Berryhill*, No. 4:17cv42, 2018 WL 4939268, at *4 (E.D.N.C. July 5, 2018) ("Because Scott has failed to carry her burden of establishing her use of an assistive device was medically required,

the undersigned cannot find that ALJ Hall erred failing to include the use of a cane in her RFC determination for a reduced range of light work.").

Accordingly, I find that substantial evidence supports the Commissioner's denial of benefits. *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) ("There were a number of conflicts in the evidence here, and we do not second guess the ALJ in resolving those conflicts. In our view, the justification provided by the ALJ—albeit somewhat sparse—was sufficient to allow us to determine that the ALJ performed an adequate review of the whole record and that the decision is supported by substantial evidence.").

## IV. Conclusion

For the foregoing reasons, the Court will **DENY** Sharon's motion for summary judgment, ECF No. 15; **GRANT** the Commissioner's motion for summary judgment, ECF No. 16; **AFFIRM** the Commissioner's final decision; and **DISMISS** the case from the Court's active docket. A separate Order shall enter.

ENTER: March 29, 2022

Joel C. Hoppe
United States Magistrate Judge